IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| LCG FREIGHT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:23-cv-01228-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| A.R.C. TRANSIT, LLC; and E.F. CORPORATION, *d/b/a West Motor Freight of Pa.*, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

This matter is before the court on defendants A.R.C. Transit, LLC ("ARC") and E.F. Corporation's ("West Motor") (together, "defendants") motion to quash, ECF No. 24. For the reasons set forth below, the court denies defendants' motion.

## I. BACKGROUND

This action arises from a contract dispute between plaintiff LCG Freight, Inc. ("LCG") and defendants. ECF No. 1-1, Compl. LCG is a commercial drayage and warehouse company serving customers who utilize ports in South Carolina and Georgia. Compl. ¶ 5. Defendants are motor carriers who provide trucking services in the Southeastern United States. Id. ¶ 6. On July 7, 2020, defendants submitted a credit application to LCG to utilize LCG's services in several brokered shipment transactions. Id. ¶ 7; see ECF No 1-1 at 7–8. By executing the credit application, defendants contracted to make payments to LCG in accordance with the terms and conditions provided therein. Id. Defendants accumulated an account balance of $98,434.03 for LCG's drayage and warehousing services provided from July 2020 to August 2022.

1

Id. ¶ 8.  LCG delivered invoices for its services to defendants, yet those invoices were not paid.  Id. ¶ 9.

Defendants' delinquent payments accrued monthly interest.  Id. ¶ 8.  Per the payment terms of the credit application, each of defendants' overdue payments were subject to an additional charge of 1.5% per month of defendants' average outstanding account balance from the due date of the invoice.  ECF No. 1-1 at 7.  On November 23, 2022, LCG delivered a demand letter to defendants for immediate payment of its outstanding account balance that had been past due since January 2022.  ECF No. 1-1 at 12.  Neither ARC nor West Motor responded to the demand letter.  Compl. ¶ 9.

LCG filed its complaint in the Berkeley County Court of Common Pleas on March 9, 2023.  ECF No. 1-1, Compl.; LCG Freight, Inc. v. A.R.C. Transit, LLC, No. 2023-CP-08-00688 (Berkeley Cnty. Ct. C.P. Mar. 9, 2023).  LCG asserts causes of action for (1) breach of contract and (2) quantum meruit.  Compl. ¶¶ 5–21.  On March 28, 2023, defendants removed the case to federal court pursuant to 28 U.S.C. §§ 1332, 1441(a)–(b), 1446.  ECF No. 1.  On June 12, 2024, defendants filed a motion to quash.  ECF No. 24.  On June 26, 2024, LCG responded in opposition, ECF No. 25, to which defendants replied on July 3, 2024, ECF No. 26.  As such, the defendants' motion to quash is now fully briefed and ripe for the court's review.

## II.  STANDARD

Under Federal Rule of Civil Procedure 45, a party may issue a subpoena for the production of discoverable material on a non-party.  A subpoena issued under Rule 45 may command a nonparty to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control."  Fed. R.

2

Civ. P. 45(a)(1)(A)(iii).  On a timely motion, a district court must quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A).  The scope of discovery under a subpoena is the same as the scope of discovery under Fed. R. Civ. P. 26(b).  Cook v. Howard, 484 F. App'x 805, 812 (4th Cir. 2012). "[T]he burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted." Sherrill v. DIO Transp., Inc., 317 F.R.D. 609, 612 (D.S.C. 2016).

### III.  DISCUSSION

Defendants' motion to quash challenges subpoenas issued by LCG to nonparties. The court will first provide an overview of the subpoenas at issue and then analyze whether defendants have standing to quash the subpoenas.

**A.  Subpoenas Issued to Nonparties**

During discovery, LCG sought records and information regarding the shipment transactions relating to defendants' overdue invoices.  ECF No. 25 at 1–3.  LCG served interrogatories and requests for production on defendants that utilized the precise language of 49 C.F.R. § 371. 3.[1]  Id.; ECF No. 25-1 at 5, 11.  Importantly, Section 371.3

---

[1] 49 C.F.R. § 371. 3 concerns records to kept by brokers. Section 371. 3 states:

> (a) A broker shall keep a record of each transaction. For purposes of this section, brokers may keep master lists of consignors and the address and

3

provides that defendants "shall keep a record of each transaction" for which defendants act as a broker. 49 C.F.R. § 371. 3(a). Additionally, as a party to the shipment transactions brokered by defendants, LCG "has a right to review the records of the transaction required to be kept" by defendants. Id. § 371.3(c). Defendants conceded that they did not produce their records for LCG to review, and that they have provided LCG with only "the substance of the information sought" during discovery. ECF No. 26 at 5–6.

Because defendants did not produce their records for review as required by Section 371.3, LCG issued subpoenas to several defendants' customers with whom

---

<p style="padding-left: 2em;">registration number of the carrier, rather than repeating this information for each transaction. The record shall show:</p>

<p style="padding-left: 4em;">(1.) The name and address of the consignor;</p>

<p style="padding-left: 4em;">(2.) The name, address, and registration number of the originating motor carrier;</p>

<p style="padding-left: 4em;">(3.) The bill of lading or freight bill number;</p>

<p style="padding-left: 4em;">(4.) The amount of compensation received by the broker for the brokerage service performed and the name of the payer;</p>

<p style="padding-left: 4em;">(5.) A description of any non-brokerage service performed in connection with each shipment or other activity, the amount of compensation received for the service, and the name of the payer; and</p>

<p style="padding-left: 4em;">(6.) The amount of any freight charges collected by the broker and the date of payment to the carrier.</p>

<p style="padding-left: 2em;">(b) Brokers shall keep the records required by this section for a period of three years.</p>

<p style="padding-left: 2em;">(c) Each party to a brokered transaction has the right to review the record of the transaction required to be kept by these rules.</p>

Id.

defendants had contracted with for the shipment transactions. ECF No. 25 at 4. Each customer who was issued a subpoena is not a party to this case. Id. The subpoenas command the customers to produce "each and every e-mail, contract, memorandum, note, communication, evidence of billing, evidence of remittance and any other tangible materials referring to or related to communications with, dealings with or financial dealings with A.R.C. Transit." ECF No. 24-2 at 4–35. Each subpoena explicitly limited the information sought to that of the specific shipment that defendants had brokered, contracted with the customer for carriage, and received an invoice for LCG's drayage and warehousing services. See id. Defendants allege that the subpoenas are unduly burdensome, seek disclosure of confidential business information, and violate notice and timing requirements of Fed. R. Civ. P. 45. See ECF Nos. 24-1; 26. LCG argues that defendants lack standing to challenge the subpoenas issued to nonparties. See ECF No. 25.

### B. Standing to Quash Subpoenas Issued to Nonparties

Before reaching the merits of a motion to quash subpoenas, the court must first determine whether the moving party has standing to challenge the subpoenas. HDSherer LLC v. Natural Molecular Testing Corp., 292 F.R.D. 305, 307 (D.S.C. 2013) (citation omitted). "Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." Id. (quoting United States v. Idema, 118 Fed. Appx. 740, 744 (4th Cir. 2005)). If the court determines that a party has standing, the court must, on motion, "quash or modify the subpoena if it requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii).

The Fourth Circuit, and district courts in this circuit, have recognized a "personal right" in subpoenaed materials in only limited circumstances.  See In re Grand Jury Subpoena: John Doe, No. 05GJ1318, 584 F.3d 175, 184 n.14 (4th Cir. 2009) (noting that a congressman lacked standing to seek to quash a subpoena seeking his congressional office's records from his Chief of Staff when the congressman had no valid claim of privilege over those documents); Corsair Special Situations Fund, L.P. v. Engineered Framing Sys., Inc., 2011 WL 3651821, at *2–4 (D. Md. Aug. 17, 2011) (finding no personal right in telephone bills, invoices, and records); Robertson v. Cartinhour, 2010 WL 716221, at *1–2 (D. Md. Feb. 23, 2010) (finding no personal right in bank records held by financial institutions); see also Lyman v. Greyhound Lines, Inc., 2021 WL 3811298, at *2 (D.S.C. Aug. 26, 2021) (finding no personal right in documents provided to government agency during investigation).  "Examples of such personal rights or privileges include the personal privacy right and privilege with respect to the information contained in [ ] psychiatric and mental health records, claims of attorney-client privilege, and other privacy interests, including those relating to salary information and personnel records." Hughes v. Twenty-First Century Fox, Inc., 327 F.R.D. 55, 56 (S.D.N.Y. 2018) (alteration in original) (citation omitted).  "Privilege" refers to the protections afforded by the rules of evidence.  See United States v. Reynolds, 345 U.S. 1, 6 (1953); accord Southern Ry. Co. v. Lanham, 403 F.2d 119, 134 n.15 (5th Cir. 1968) (noting that privileges referred to in the discovery rules correspond to those in the rules of evidence).

The court finds that defendants do not have standing to quash the subpoenas because defendants have failed to show a "personal right" or "privilege" in the

information sought from the nonparty customers.[2]  Defendants do not allege any specific privilege.  Instead, defendants argue that they "have a personal right to not have each and every communication or sensitive financial information" disclosed.  ECF No. 26 at 3.  Further, they assert that the information sought will reveal "confidential business dealings" and "specific pricing and proprietary business information."  Id.; ECF No. 26 at 3.  This court, in analyzing a motion a quash, has recognized that individuals have a personal right in their confidential commercial information.  Lyman, 2021 WL 3811298, at *3.  "Confidential commercial information has been defined as important proprietary information that provides the business entity with financial or competitive advantage when it is kept secret and results in competitive harm when it is released to the public."  Rech v. Wal-Mart Stores East, L.P., 2020 WL 3396723, at *2 (D.S.C. July 19, 2020)

---

[2] For the same reasons, the court denies defendants' request to construe their motion to quash as a motion for a protective order.  See ECF Nos. 24-1, 26.  "A moving party has standing to challenge a subpoena under Rule 26 'regardless of whether it has standing to bring a motion to quash under Rule 45.'"  HDSherer LLC, 292 F.R.D. at 307 (D.S.C. 2013) (quoting Singletary v. Sterling Transp. Co., 289 F.R.D. 237, 240 n.2 (E.D. Va. 2012)).  Under Fed. R. Civ. P. 26(c), a party may move for a protective order to protect from "annoyance, embarrassment, oppression, or undue burden or expense" even where the moving party seeks to "prevent disclosure of information by a nonparty." Id. (quoting Firetrace USA, LLC v. Jesclard, 2008 WL 5146691, at *2 (D. Ariz. Dec. 8, 2008).  The moving party must "tie the protected information to an interest listed" in Rule 26(c).  Id. at 307–08.  Here, the court finds that defendants cannot link the subpoenaed information to a harm listed in Rule 26(c) because of the requirements placed on defendants by 49 C.F.R. § 371.3.  Section 371.3 explicitly mandates that defendants "shall keep record" of each brokered shipment transaction.  49 C.F.R. § 371.3(a).  Section § 371.3 also grants LCG a "right to review" defendants' records and to the information therein.  Id. § 371.3(c).  Defendants admitted their failure to adhere to Section 371.3 by producing only "the substance of the information sought".  ECF No. 26 at 5–6.  What LCG seeks from defendants' customers is essentially that which defendants were obligated to make available during discovery and which LCG was entitled to receive and review.  The court will not allow violations of federal regulations and litigation gamesmanship to be sheltered by an unmerited protective order.  Litigation "is not a sporting event, and discovery is founded upon the policy that the search for truth should be aided."  Tiedman v. Am. Pigment Corp., 253 F.2d 803, 808 (4th Cir. 1958).

(quoting United Prop. & Cas. Ins. v. Couture, 2020 WL 2319086, at *7 (D.S.C. May 11, 2020)).

      Defendants' arguments are not sufficient to establish a personal right in the information sought from the nonparty customers. They make no legal or factual showing that the subpoenaed information constitutes confidential commercial information. Defendants merely contend, without more, that the information is "confidential," "sensitive," and "proprietary." Their single, cursory claim that the subpoenas will cause competitive harm is without evidence and is speculative at best. Cf. HDSherer, 292 F.R.D. at 308 (finding subpoenaed information likely harm customer relationships where documents sought would credibly lead to allegations of fraud and civil and criminal penalties against customers). Moreover, defendants do not identify any recognized privacy interest in the records or information of their customers. Because defendants have not demonstrated a personal right or privilege in the information sought, defendants are without standing to challenge the subpoenas issued by LCG to defendants' nonparty customers.

## IV.   CONCLUSION

For the foregoing reasons the court **DENIES** defendants' motion to quash.

**AND IT IS SO ORDERED.**

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**November 25, 2024
Charleston, South Carolina**