IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| LCG Freight, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:23-cv-01228-DCN |
| vs. ) | |
| ) | **ORDER** |
| A.R.C. Transit, LLC, and ) | |
| E.F. Corporation, d/b/a West Motor ) | |
| Freight of Pa., ) | |
| ) | |
| Defendants. ) | |
| ) | |

The following matters are before the court on defendants A.R.C. Transit, LLC, ("A.R.C.") and E.F. Corporation, d/b/a West Motor Freight of Pa.'s ("West") (collectively "defendants") motion to compel, ECF No. 38, and LCG Freight, Inc.'s ("LCG") motion to compel, ECF No. 46. For the reasons set forth below, the court grants in part and denies in part defendants' motion to compel and denies LCG's motion to compel.[1]

## I. BACKGROUND

This case arises out of a shipping contract, in which defendants contracted with LCG to ship their products (the "Shipments"). See generally, ECF No. 1-1, Compl. Between July 2020 and August 2022, defendants utilized drayage and warehousing services provided by LCG and were charged $98,434.03, with interest of 1.5% per month from the due date of each invoice. Id. at ¶ 8.

---

[1] The court orders defendants to file an affidavit, within fifteen days from the date of this order, that they do not possess the documents LCG moved to compel, as they stated in their briefing, and at the hearing on July 17, 2025, ECF No. 45.

1

The shareholder of LCG is also the sole member of Cargo Logistics International, LLC ("Cargo Logistics"), which provides shipping and warehousing services. ECF No. 40 at 1. Both Cargo Logistics and LCG maintain a PIN number for entering and exiting the Port of Charleston. Id. The contract between LCG and defendants was for Shipments from the Port of Charleston to customers of defendants. Id. at 2. Defendants allege LCG used Cargo Logistics to transport their Shipments, evidenced by the use of Cargo Logistics' PIN to exit the port with defendants' Shipments. Id. Cargo Logistics issued a bill to LCG for additional fees charged by third-party shipping companies at the port, and LCG sent those charges to defendants along with an administrative markup.[2] Id. The officers of LCG testified on deposition that the Shipments were conducted under the authority of LCG, that Cargo Logistics did not transport any Shipments, and that the only relationship of Cargo Logistics to the Shipments was the use of the PIN by LCG drivers for the purpose of exiting the port. Id.

The corporate representative for LCG and Cargo Logistics, Chad Rundle, testified that: "Sometimes when there's a -- a lot of backlog [the drivers will] end up requesting [a PIN] from another trucking company to assist or if someone locked their account, they'll reach out to -- to get a pin." ECF No. 41-2, Rundle Depo. at 19: 21-25. Rundle explained that the PIN is "a six-digit code that is issued. A trucking company can process container numbers to obtain pins, and those pins are supplied so you can outgate a container from the port." Id. at 19:13-18. Rundle did not know why the Cargo Logistics PIN was used in this instance, but explained "Cargo would have had – would have had to supply the

---

[2] The fee results from a charge by a third-party to Cargo Logistics, Cargo Logistics then adds a twenty-five percent administrative fee and bills LCG, and LCG then adds a ten percent administrative fee and bills defendants. ECF No. 41-4, Kemp Depo. at 12–13.

2

PIN to LCG for the name to populate" and it wasn't uncommon for LCG and other carriers to request Cargo Logistics' PIN to get containers out of the port. Id. at 25:13-16.

Additionally, Kerri Kemp, the corporate representative for LCG, testified that if the Cargo Logistics PIN had not been used, the twenty-five percent administrative charge would not have been added. ECF No. 41-4, Kemp Depo. at 18:6-10. She further stated there are two main reasons the Cargo Logistics' PIN may have been used, but she does not know the exact reason in this case. Id. at 8:17-20. The first reason could be that the driver is temporarily locked out from wrongly entering his or her code three times. Id. at 9:9-13. The second reason is a "vicious circle" that occurs during a "dual mission scenario" where a driver has to use the same PIN to enter and exit the port, and if a driver either entered a wrong PIN the first time, had an issue entering it, or was delivering multiple loads, he or she may be stuck using the wrong PIN for weeks. Id. at 10:6-10. She stated that the port systems could be finicky and someone's login could not be working, and that the "Charleston port in particular, their system will just work one minute, not one minute, not go down for everybody but just have hiccups to where I don't have time to wait for them to get their port system working for my login, check and see if Cargo's login is working, ask them, yes, our logins are working." Id. at 10:10-19.

LCG filed its Complaint in the Court of Common Pleas in Berkeley County on March 8, 2023, Case No. 2023-CP-080-0688. ECF No. 1-1. LCG brings two causes of action: (1) breach of contract, and, in the alternative, (2) quantum meruit.[3] Compl. ¶¶ 5-

---

[3] [LCG] provided commercial drayage and warehouse services to defendants, which conferred a benefit to defendants, allowing it to operate and conduct business; defendants accepted and used the benefits of the drayage and warehouse services, and conducted operations during such period by reason of the provision of such services; and defendants knew, or reasonably should have known, that [LCG] expected to be paid for the services provided to defendants. Compl. at ¶¶ 17-19.

3

21. On March 28, 2023, defendants removed this action to this court. ECF No. 1. On December 24, 2024, defendants filed their Second Set of Interrogatories and Requests for Production to [LCG]. ECF No. 38. On February 6, 2025, LCG served responses to the Second Set of Interrogatories and Requests for Production of Documents. Id. at ¶ 4.

On May 12, 2025, defendants filed their motion to compel production from LCG. ECF No. 38. On May 27, 2025, LCG responded in opposition to defendants' motion to compel. ECF No. 40. On June 3, 2025, defendants replied to LCG's response to their motion to compel. ECF No. 41. On July 11, 2025, LCG filed their motion to compel. ECF No. 46. On July 16, 2025, defendants filed their response to LCG's motion to compel, and LCG did not reply.[4] ECF No. 47. A hearing was held on both motions on July 17, 2025. ECF No. 45. As such, both motions have been fully briefed and are now ripe for the court's review.

## II. STANDARD

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Notably, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id. "The scope and conduct of discovery are within the

---

[4] LCG agreed to discuss its motion to compel at the hearing, without filing its reply brief. ECF No. 45.

4

sound discretion of the district court." Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Rsch., Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also United States ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

A party who requested admissions "may move to determine the sufficiency of an answer or objection." Fed. R. Civ. P. 36(a). Moreover, if a party declines to comply with a discovery request, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). An evasive or incomplete disclosure, answer, or response "must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." Ardrey v. United Parcel Serv., 798 F.2d 679, 683 (4th Cir. 1986); In re MI Windows & Doors, Inc. Prod. Liab. Litig., 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

### III.   DISCUSSION

**A.  Defendants' Motion to Compel as to Interrogatory No. 25 is Granted**

Defendants' Interrogatory No. 25 states: Set forth the names and addresses of the drivers who transported the Shipments at issue in this litigation.
ECF No. 38-1 at 6.

LCG's response states: [LCG] objects to this Interrogatory on the grounds that the same is neither relevant to this case nor reasonably calculated to lead to the discovery of relevant evidence.

ECF No. 38-3 at 2.

LCG argues that the identity and addresses of the drivers are irrelevant because its officers have provided sworn testimony that the Shipments were transported under the authority of LCG, no transportation was done under the authority of Cargo Logistics, and the only relation of Cargo Logistics was the provision of its PIN to exit the port. ECF No. 40 at 3. It argues that, regardless of who transported the Shipments, transportation was provided, and LCG is entitled to recover the contractual compensation for that transportation. Id.

In response, defendants argue the Shipments were brokered only to LCG to transport, but due to evidence to the contrary, inquiry into the drivers' identities is relevant to their breach of contract claim. ECF No. 41 at 1. During discovery, LCG produced emails in which representatives of LCG purported to represent Cargo Logistics in their dealings with defendants, documents identifying Cargo Logistics as the transporting motor carrier for several of the Shipments, and several invoicing documents produced by LCG regarding Shipments which list fees LCG claimed it incurred from Cargo Logistics and then subsequently billed back to defendants. Id. at 2. Defendants contend that LCG makes no argument that Interrogatory No. 25 is not proportional to the needs of the case, and that it makes no compelling argument for why the information regarding the drivers who transported the loads is not relevant. Id. Defendants argue the documents produced by LCG show that Cargo Logistics clearly had a significant role with respect to the transporting of the Shipments. Id. at 4. They argue information regarding the drivers who actually transported the Shipments, including their employers and whether they were operating under LCG's authority or Cargo Logistics' authority, is

6

relevant to the issues in this case, specifically the charges LCG is attempting to collect and the defenses which defendants have raised with respect to the charges. Id. at 3–4.

The corporate representatives of LCG and Cargo Logistics, Chad Rundle and Kerri Kemp, testified that the charges affiliated with Cargo Logistics were simply for LCG's drivers utilizing Cargo Logistics' PIN to pull containers from the Port of Charleston. Id. at 4. Defendants contend that neither of them could provide any definitive explanation as to why this was done, how defendants could have been aware of or consented to Cargo Logistics' involvement, or why there would be other charges incurred by Cargo Logistics on behalf of loads brokered by defendants only to LCG. Id. at 4.

The court finds the identity of the drivers of the Shipments at issue are discoverable and are proportional to the needs of this case. Although the parties could not provide an exact number for the Shipments at issue, and noted there may be as many as four drivers for each Shipment, the request is not so broad as to be disproportional to the needs of the case. Whether LCG or Cargo Logistics drivers transported the Shipments goes to the breach of contract claim, as is whether LCG stayed within the bounds of the parties' agreement. The evidence in the record that Cargo Logistics' PIN number was used at the Port of Charleston, and the corporate representatives lack of clear response as to why, alongside their direct mention of the drivers, raises an issue of fact that could be relevant to the case at hand. The identity of the drivers is discoverable as it is likely to lead to relevant evidence, specifically an explanation of why the Cargo Logistics' PIN was used for defendants' Shipments. As such, the motion to compel as to Interrogatory No. 25 is granted.

### B. Defendants' Motion to Compel as to Request No. 26 is Granted

Defendants' Second Set of Requests for Production No. 26 states: Copies of the applicable logs or timesheets for the drivers who hauled the Shipments which are the subject of this litigation.
ECF No. 38-1 at 10.

LCG's response states: [LCG] objects to this Request for Production on the grounds that the same is neither relevant to this case nor reasonably calculated to lead to the discovery of relevant evidence.
ECF No. 38-3 at 4.

LCG makes the same argument for all of its responses. ECF No. 40 at 3–4. It again argues that the issue in this suit is the recovery of proper charges for the transportation of goods, and the production of driver logs and timesheets for the drivers of the shipments is irrelevant to the litigation. Id. at 4.

Defendants reply that the information and documentation sought in the foregoing discovery requests is relevant to the issue of whether LCG or Cargo Logistics transported the Shipments at issue in this litigation. ECF No. 41 at 3. This information is relevant to the defense of the claims, particularly LCG's charge of an administrative fee for Cargo Logistics on the Shipments. Id. Defendants argue LCG makes no argument that the sought after discovery is not proportional to the needs of the case and makes no compelling argument for why the information regarding the drivers who transported the Shipments that are the subject of this litigation is not relevant. Id.

The court finds, due to the evidence in the record that Cargo Logistics was somehow involved in the Shipments, the logs of the drivers will provide additional

information on which Shipments used the Cargo Logistics PIN, when it was used, and why it was used – whether it was an occasional log-in error, the "vicious circle," or for some other reason.  The driver logs and time sheets are discoverable, as they are likely to lead to evidence related to the to the charges and fees in dispute.  As such, the motion to compel as to Request No. 26 is granted.

### C.  Defendants' Motion to Compel as to Request No. 27 is Denied

Defendants' Second Set of Requests for Production No. 27 states:  Copies of the driver qualification files for the drivers who hauled the Shipments which are the subject of this litigation.
ECF No. 38-1 at 10.

LCG's response states: [LCG] objects to this Request for Production on the grounds that the same is neither relevant to this case nor reasonably calculated to lead to the discovery of relevant evidence.
ECF No. 38-3 at 4.

LCG argues the driver qualification files are irrelevant to this litigation. ECF No. 40 at 3.  It further argues the request for driver qualification files is overly broad for the limited purpose of discovering the employer of any such drivers at the time of these Shipments.  ECF No. 40 at 4.

In response, defendants argue that the driver qualification files are necessary for defendants to learn which company oversaw and controlled each driver, to determine why Cargo Logistics administrative charges were added to the invoices.  ECF No. 41 at 6.

The court finds that the request for the driver qualification logs is duplicative and unduly burdensome, as the key information sought of which company oversaw each driver may be found through the responses to Requests Nos. 25 and 26. The court does not see a need to turn over the driver qualification logs, but if a need does arise, defendants may re-file their motion. As such, the motion to compel as to Request No. 27 is denied without prejudice.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** in part and **DENIES** in part defendants' motion to compel, **DENIES** LCG's motion to compel, and **ORDERS** defendants to file an affidavit, within fifteen days from the date of this order, stating they are not in possession of the documents requested in LCG's motion to compel.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**July 18, 2025
Charleston, South Carolina**